**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AARON CHRISTOPHER WHEELER,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 18-3813** |
| **CORRECTIONS EMERGENCY** | : | |
| **RESPONSE TEAM (CERT),** *et al.*, | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                                    **June 27, 2019**

## MEMORANDUM

Plaintiff Aaron Christopher Wheeler brings this claim pursuant to 28 U.S.C. § 1983 against multiple Defendants from the Commonwealth of Pennsylvania, including the Corrections Emergency Response Team ("CERT"), Secretary John Wetzel, Superintendent Tammy Ferguson, and multiple John/Jane Doe Defendants (collectively, "Defendants"). For the following reasons, I will grant Defendants' Motion and dismiss the case under Federal Rule of Civil Procedure 12(b)(1).

## I.       FACTUAL BACKGROUND

The Complaint sets forth the following facts:[1]

The State Correctional Institution at Graterford, Pennsylvania ("Graterford") went into a state of emergency from July 10, 2018 to August 14, 2018, during which the prison was locked down and all services/programs were suspended. From July 2 to July 15, 2018, correction officers,

---

[1]         When determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). In accordance with this principle, my recitation of the facts assumes the truth of the factual statements in the Amended Complaint.

directed by Defendants Ferguson and Wetzel, moved Plaintiff and other Graterford prisoners, together with their legal and personal property, from Graterford to the State Correctional Institution at Phoenix, Pennsylvania ("Phoenix"). During that move, the Corrections Emergency Response Team ("CERT")—made up of prison staff from other prisons—wrote Nazi signs, the word "nigger," and penises on Plaintiff's and other prisoners' photos, legal materials, and other personal property. In addition, CERT threw legal/personal property and documents away in huge trash bins, stole wedding rings, necklaces/chains, watches, sneakers, and other property from prisoners, placed remotes in vaseline, and "did all other type of illegal, unlawful, hateful, improper and criminal acts" to Plaintiff's legal and personal property. Some of the acts were committed by CERT in front of Graterford officers, which resulted in complaints being made and filed by Graterford staff. In the course of performing these various acts, CERT did not inventory any of the property or issue any confiscation slip for the property. (Compl. ¶¶1–2, 4–5.)

The members of CERT did not wear name tags and came from various upstate prisoners. Moreover, the searches were not performed in Plaintiff's presence and, as such, Plaintiff is unable to identify the various individual officers. (Id. ¶¶ 3, 6.)

When CERT threw away Plaintiff's legal documents, Plaintiff had six legal matters pending. On August 22, 2018, a Pennsylvania trial court judge dismissed Plaintiff's PCRA petition for failing to a respond to a notice that Plaintiff did not receive during the transfer and state of emergency. (Id.) Plaintiff alleges that his "property was brought to his Phoenix cell in a blue bin with his two boxes and footlocker materials dumped out and in the blue bin." (Id. ¶¶ 7, 9.)

Prior to the July 2018 transfer of Graterford prisoners, Grateford staff performed cell searches and cell content compliances, ensuring Plaintiff and all prisoners had two legal boxes and one footlocker, or four legal boxes with no contraband. (Id. ¶ 10.)

Plaintiff filed grievance #747981 on July 18, 2018, when he noticed some of his materials missing and/or destroyed.[2]  Plaintiff also filed several supplements and proposals with Defendant Ferguson and Major Clark to resolve this matter.  Those requests went unanswered and Defendant Ferguson suspended the grievance process as small settlements were reached with several prisoners in order to prevent lawsuits.  (Id. ¶¶ 11–12.)

Plaintiff was placed on the callout to see Major Clark on August 24, 2018, at which time he was offered $200 for his legal materials and $278 for his other property.  When Plaintiff explained that he had six active cases, he was told that he had to go through the grievance and court process.  Plaintiff demanded a settlement of $6,447 ($1,000 per court case plus $447 for his broken/missing property).  In addition, he wanted (a) copies of all of his records pertaining to Civil Action No. 18-278, pending in the Eastern District of Pennsylvania; (b) copies of his two commutation applications with all of their attached documents; and (c) the honoring of cell agreements.  Defendants ignored Plaintiff's proposals and had officers trash Plaintiff's cell during an alleged investigative cell search on August 28, 2018.  (Id. ¶¶ 15–16.)

Plaintiff asserts that retrieving all of his lost pleadings, opinions, rulings, legal transcripts, and other documents will cost thousands of dollars.  (Id. ¶ 17.)

Plaintiff filed this case on September 6, 2018, alleging violations of his First, Fourth, Eighth, Ninth, and Fourteenth Amendments.  Defendants Wetzel and Ferguson moved to dismiss on November 16, 2018, and Plaintiff filed a response on December 26, 2018.

---

[2]     Plaintiff claimed loss of the following items:  broken skull headphones ($30), mirror ($2), six boxers ($5), six socks ($6), six undershirts ($15), Timex sports watch ($35), AC adapter ($13), sweatshirt ($17), sweatpants ($17), sweatshorts ($17), laundry bag ($5), extension cord ($5), terrycloth robe ($30), cable cord and extension ($15), Reebox cleats ($65), May Family Clinic book ($50), barbershop book ($50), six nylon [illegible] rub-ons ($30), one Broughan Daisy Wheel ($30), for a total of $446.  Irreplaceable items included two legal envelopes of letters from family and friends, a telephone book, some Villanova school books, and legal materials.  (Id. ¶ 13.)

## II. STANDARDS OF REVIEW

### A. <u>Rule 12(b)(1)</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case. <u>Petruska v. Gannon Univ.</u>, 462 F.3d 294, 302 (3d Cir. 2006). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." <u>Id.</u> at 302 n.3 (quotation omitted).

There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction. <u>Mortensen</u>, 549 F.2d at 891. In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue. <u>Id.</u>

### B. <u>Rule 12(b)(6)</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); <u>see also</u> <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

A prisoner's *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." United States ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

## III.    DISCUSSION

### A.    <u>Official Capacity Claims</u>

Defendants Ferguson and Wetzel first move for dismissal of any § 1983 claims brought against them in their official capacities.

The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The United States Supreme Court has noted that the Eleventh Amendment presupposes that each state is a sovereign entity in our federal system and that, as a sovereign, it is not amenable to the suit of an individual without its consent.  <u>Seminole Tribe of Fl. v. Fl.</u>, 517 U.S. 44, 54 (1996).  The type of relief sought is irrelevant—the Eleventh Amendment bars an action regardless of whether the plaintiff seeks legal or equitable relief.  <u>Id.</u> at 58.  The Eleventh Amendment also extends immunity to suits for retrospective monetary relief against state officials in their official capacity.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169–70 (1985).  This is because "a suit against a state official in his or her official capacity is . . . no different from a suit against the State itself."  <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58, 71 (1989).

Here, both Wetzel and Ferguson are employees of the Pennsylvania Department of Corrections, which is an executive department of the Commonwealth of Pennsylvania entitled to Eleventh Amendment immunity.  71 P.S. § 61(a).  As Eleventh Amendment immunity extends to state officials in their official capacity, any claims against Wetzel and Ferguson in their official capacities are barred and must be dismissed.

**B.** **Destruction or Loss of Property Claim**

Defendants Wetzel and Ferguson further seek dismissal of claims against them in their individual capacities for the destruction or loss of Plaintiff's property because Plaintiff had an adequate post-deprivation remedy.

Inmates are foreclosed from bringing claims under 42 U.S.C. § 1983 to vindicate a property right where adequate post-deprivation remedies exist under state law. See Hudson v. Palmer, 468 U.S. 517, 532–33 (1984) (intentional deprivation of property); Parratt v. Taylor, 451 U.S. 527, 530 (1981) (negligent deprivation of property). "In Pennsylvania, the state prison system has established an internal grievance procedure through which the state hears claims and, when appropriate, provides remedies [.]" Mattis v. Dohman, 260 F. App'x 458, 461 (3d Cir. 2008). The United States Court of Appeals for the Third Circuit has held that the Department of Corrections' grievance procedure provides an adequate post-deprivation remedy. McNeil v. Grim, 736 F. App'x 33, 34–35 (3d Cir. 2018); Tillman v. Lebanon Cty. Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000). The existence of this post-deprivation remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the process. Tillman, 221 F.3d at 422; see also Reyes v. Walsh, No. 12-2004, 2013 WL 4041576, at *6 (M.D. Pa. June 12, 2013); Iseley v. Horn, No. 95-5389, 1996 WL 510090, at * 6 (E.D. Pa. Sept. 3, 1996); Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995).

Here, Plaintiff admits to having access to and using the grievance process. Plaintiff filed grievance #747981 on July 18, 2018, when he noticed some of his materials missing and/or destroyed. (Compl. ¶ 11.) Although his original requests went unanswered and Defendant Ferguson suspended the grievance process, Plaintiff admitted that the suspension was temporary and was done so that settlements could be reached with prisoners over the property losses. (Id. ¶ 12.) Eventually, on August 24, 2018, Plaintiff was offered $200 for the loss of his legal materials

and $278 for the loss his other property.  (Id. ¶ 14.)  Although Plaintiff was dissatisfied with the offer, his allegations make clear that "he had access to an adequate post-deprivation remedy and even if there had been a violation of his liberty interest he was not denied the right to due process of law."  Brooks v. DiGuglielmo, No. 05-4588, 2008 WL 5187529, *6 (E.D. Pa. 2008) (footnote omitted).

### C.     Whether the Grievance Process Was Inadequate

Plaintiff's final claim is that the grievance process was inadequate because Defendant Ferguson temporarily suspended the process.  This allegation fails to state a claim upon which relief may be granted.

Prisoners and parolees who remain in some type of institutional confinement do not have a constitutional right to prison grievance procedures.  Thompson v. Pitkins, 514 F. App'x 88, 89–90 (3d Cir. 2013); Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013).  All that is required is that the process is adequate to provide a post-deprivation remedy.  Tillman, 221 F.3d at 422.

As noted above, the DOC prison grievance system has been recognized by courts in the Third Circuit as providing adequate postdeprivation remedies to inmates in satisfaction of the Due Process Clause.  Id. ("The grievance program allowed prisoners to complain about 'any' matter that is 'unjust' . . . [therefore,] the plaintiff had an adequate postdeprivation remedy."); Allah v. Al–Hafeez, 208 F. Supp. 2d 520, 537 (E.D. Pa. 2002) (same).

Here, Plaintiff's Complaint makes clear that the "suspension" of the grievance process was, in reality, only a temporary suspension of the dictated response times to grievances.  Attached to Plaintiff's Complaint is an "Information Bulletin" from Defendant Ferguson, stating:

> As a result of the transition from SCI-Graterford, the timeline constraints regarding the DC-ADM 804, Inmate Grievance System are currently suspended.  Responses to the grievances and appeals may not be completed within the normal timeframe indicated within [the] policy; however, they will be completed as soon as possible.

> Again, we thank you for your cooperation throughout this transitional period.

(Compl., Ex. H.)[3]

Simply because Plaintiff faced some delay in having his grievance heard does not demonstrate that the process was inadequate, meaningless, or otherwise constitutionally infirm. Nor is there any evidence that plaintiff was denied access to the grievance process. At most, Plaintiff's allegations suggest that that post-deprivation procedures were available to him, that he took advantage of that process, and that he received a response that he believed was unsatisfactory. "The failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Gordon v. Vaughn, No. 99-1511, 1999 WL 305240, at *2, (E.D. Pa. May 12, 1999) (citations omitted); see also Reyes v. Walsh, No. 12-2004, 2013 WL 4041576, at *7 (M.D. Pa. 2013) (same); Austin v. Lehman, 893 F. Supp. 448, 454 & n.4 (E.D. Pa. 1995) ("Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy.").

For these reasons, I find that Plaintiff has failed to state a plausible claim of constitutional injury actionable under section 1983. Moreover, as recognized by the Third Circuit, any amendment of the Complaint would be futile "because even if a prisoner claims that the prison grievance procedures were constitutionally inadequate, Pennsylvania's state tort law would provide an additional adequate remedy." McNeil, 736 F. App'x at 35 (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)); see also Banks v. Beard, No. 03-659, 2006 WL 2192015 at *15 (W.D. Pa. Aug. 1, 2006) (regarding inmate plaintiff's claim that he was permanently dispossessed of his property, "[t]he Commonwealth of Pennsylvania provides an adequate post deprivation remedy in

---

[3]     In considering a motion to dismiss, a court may consider exhibits attached to the complaint. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).

the forms of the DOC grievance system and/or a state law tort law suit against the Defendants . . .

[which] satisfy the Fourteenth Amendment's procedural due process guarantee") (citations

omitted).

## III.    CONCLUSION

For the reasons set forth above, I will dismiss Plaintiff's Complaint with prejudice.[4]

---

[4]     The Third Circuit has held that "an action cannot proceed solely against unnamed parties," so that the dismissal of all named parties requires dismissal of the entire suit. Hindes v. FDIC, 137 F.3d 148, 159 (3d Cir. 1998).